UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

**BARBARA W.,**

**Plaintiff,**

    v.

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant**.

Case No. 1:22-cv-00575-TPK

**OPINION AND ORDER**

## OPINION AND ORDER

    This case is again before the Court to consider a final decision of the Commissioner of Social Security which denied Plaintiff's applications for social security disability benefits and supplemental security income. The Court's prior decision (Doc. 20 in Case No. 1:19-cv-583-JPG) can be found at 2021 WL 248453. Plaintiff has now moved for judgment on the pleadings (Doc. 11) and the Commissioner has filed a similar motion (Doc. 12). For the following reasons, the Court will **DENY** Plaintiff's motion, **GRANT** the Commissioner's motion, and direct the entry of judgment in favor of the Commissioner**.**

### I. BACKGROUND

    The background of this case up to and including the Court's prior order of remand is set forth in that order. *See Barbara W. v. Kijakazi*, 2021 WL 248453, *1 (W.D.N.Y. Jan. 26, 2021). That remand was based on this Court's conclusion that the ALJ committed legal error by formulating a residual functional capacity finding without evidence of how Plaintiff's neck and back impairments impacted her ability to perform work-related activities and by relying on a stale and vague medical opinion from Dr. Liu, a consultative examiner. Following remand, the Appeals Council referred the matter to an administrative law judge for further proceedings. The ALJ held an administrative hearing on December 23, 2021. Plaintiff , a medical expert, Dr. Lorber, and a vocational expert, Rocco Meola, all testified at the hearing.

    The ALJ issued an unfavorable decision on March 29, 2022. He found, first, that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2020, and that she had not engaged in substantial gainful activity since her alleged onset date of July 28, 2015. Next, he determined that Plaintiff had severe impairments including cervical spine stenosis with disc herniation and status post-cervical spine fusion, lumbar spine disc disease, and asthma. However, he also determined that none of these impairments, considered singly or in combination, met the criteria for disability under the Listing of Impairments.

Moving to the next step of the sequential evaluation process, the ALJ concluded that Plaintiff could perform sedentary work.  However, she had to stand or stretch once every thirty minutes, could only occasionally climb ramps or stairs, could not climb ladders, ropes, or scaffolds, could not crouch, crawl, or reach overhead, and could occasionally stoop or kneel.  Additionally, Plaintiff could frequently handle and finger objects, could not engage in repetitive movements of the neck, had to hold an assistive device while walking, could not be exposed to extreme heat or cold, could not be exposed to concentrated pulmonary irritants or excessive vibration, and could not work around hazards.  Lastly, the ALJ found that Plaintiff was limited to the performance of simple, routine tasks, could make only simple work-related decisions, could not independently develop work strategies or identify workplace needs, could not supervise others, and could do only work which required performing the same tasks every day with little variation in location, hours, or tasks.

Given these limitations, the ALJ found that Plaintiff could not perform her past work as a collections clerk.  However, based on the testimony of the vocational expert, he determined that Plaintiff could do unskilled sedentary jobs like document prep worker, table worker, and scale operator.  He also concluded that these jobs existed in significant numbers in the national economy.  As a result, the ALJ determined that Plaintiff was not under a disability as defined in the Social Security Act.

In her motion for judgment on the pleadings, Plaintiff raises three issues, stated here *verbatim*:

> 1. The ALJ assessed a highly specific RFC not tethered to the record or based on substantial evidence.
>
> 2. The vocational expert's testimony, upon which the ALJ based his step five finding, was inconsistent with the Dictionary of Occupational Titles, and the ALJ failed to identify and resolve this conflict.

## II.  THE KEY EVIDENCE

### A.  Hearing Testimony

At the first administrative hearing, held in 2018, Plaintiff testified that she was 45 years old and had a high school diploma.  She said she stopped working in 2015 due to injuries she received after being hit by a car.  Plaintiff testified that she could not currently work due to difficulties sitting and standing for prolonged periods and needing assistance in her daily activities.  She lived alone except for when her daughter was home from college.  Plaintiff was able to drive a car but did not do so due to pain in her back.  She also used a walker that had been prescribed for her by her doctor.

When asked about her medications, Plaintiff said that they caused side effects such as nausea, diarrhea, fatigue, and anxiety. She said she had neck surgery in 2015 and she was receiving injections in her low back. They alleviated her symptoms somewhat for several months. Chiropractic treatment helped her neck. Plaintiff also had the help of a nursing assistant for 21 hours per week to assist with household chores and going to the bathroom, and that had been the case since her surgery. She did not attempt to do household chores herself, nor did she shop for groceries. Plaintiff went to church on a very occasional basis and never went out to eat. She was able to socialize with family members and neighbors but said she had severe anxiety which affected her ability to concentrate. She was not able to lift a gallon of milk, could stand for 20 or 30 minutes, could walk ten minutes, and could sit for 20 to 30 minutes. On a typical day, Plaintiff said that she watched television, talked on the phone, and took medications.

At the 2021 hearing, Plaintiff confirmed that she was still having trouble using the bathroom by herself and that this would affect her ability to work, as would her frequent incontinence. She also said that her daughter had been approved as her home health aide and was at her house every day. Plaintiff said that she was now unable to stand for any length of time without assistance and could sit only 15 minutes at a time before needing to change positions. She also reported weakness in her left hand and said she had real trouble sleeping due to pain, but marijuana provided some help, and she napped for several hours during the day. Lastly, she said she could not reach overhead, even to do her hair.

The medical expert who testified at that hearing, Dr. Lorber, first asked Plaintiff some questions about her medications and her marijuana use as well as her mobility. After summarizing her medical records, he testified that she did not qualify for disability under the Listing of Impairments but that tests did show disc herniations at the L3-4 and L4-5 levels and some impairment in the cervical spine. He then assessed her functional capacity, concluding that she could lift ten pounds occasionally, could stand or walk in intervals of 30 minutes up to two hours per day, could sit in intervals of two hours up to six hours per day, could not work around workplace hazards, could occasionally climb stairs or ramps, needed to avoid excessive vibration, could walk with a cane, could occasionally stoop or crouch but could not kneel or crawl, could only occasionally reach overhead, and should avoid exposure to fumes, extreme cold, and extreme heat. Lastly, he said that the functional assessment from Plaintiff's physician's assistant, Ms. Cruz, was not consistent with the evidence.

The final witness at the hearing was the vocational expert, Mr. Meola. He first agreed that Plaintiff's past work as a collections clerk was performed at the sedentary exertional level. He was then asked questions about a person with Plaintiff's vocational profile who could work at that level with an option to stand and stretch after 30 minutes of sitting, who could not reach overhead bilaterally, who could only frequently handle and finger objects, who was limited in her ability to engage in frequent neck movements, and who otherwise was limited as described by Dr. Lorber. The person also had some mental limitations which restricted her to simple tasks and simple work-related decisions and no supervision of others. The expert testified that with these limitations, the person could not do Plaintiff's past relevant work but could be employed as a document prep worker, table worker, or scale operator. He also gave numbers for those jobs as

they existed in the national economy.  If, however, the person would be off task for 20% of the workday, that would preclude any employment, as would missing two days of work per month.  Lastly, the expert said that if the person were limited to only occasional use of either upper extremity for handling or fingering, there would be no sedentary unskilled jobs that person could do.

### B.  Medical Evidence

The relevant medical records show the following. The evidence amassed as part of the administrative proceedings leading up to the Court's order of remand is summarized in the Court's prior decision and will be repeated only briefly here.  As noted above, the records showed that following her accident, Plaintiff was diagnosed with discogenic disease of the cervical and lumbar spines and reported symptoms including pain in her neck and lower back, weakness and numbness in her hands, and problems with walking as well as urinary incontinence.  The records also indicated that any improvement in her symptoms from treatment such as epidural steroid injections was only temporary.  The consultative examination done by Dr. Liu, also summarized in the Court's prior opinion, indicated that Plaintiff was moderately limited in her ability to engage in prolonged walking, bending, kneeling, and overhead reaching.  At the examination done by Dr. Liu, Plaintiff demonstrated some limitation in motion in her neck and back but she had full range of motion in her hands, arms, and legs and did not show any sensory abnormality or instability. That opinion was rendered almost two years prior to the ALJ's decision.  Subsequent treatment records contain evidence of Plaintiff's continued complaints about weakness in her arms and legs as well as pain radiating down the left arm, and her surgeon, Dr. Siddiqui, thought that these symptoms were related to ulnar neuropathy.

Plaintiff's memorandum identifies some additional relevant treatment records, including those from a physician's assistant, Ms. Cruz.  They indicated that Plaintiff had limited range of motion due to pain, had been prescribed assistive devices for walking, had bilateral muscle spasms, and walked with an abnormal gait.  Ms. Cruz ultimately rendered a functional capacity opinion which will be set out in more detail below.

### C.  Opinion Evidence

Dr. Liu performed a second consultative examination on May 7, 2021.  Plaintiff's major complaint was whole body pain exacerbated by cold weather and exercise.  She said she had low back pain radiating into both legs, numbness and tingling in her neck and back as well as occasionally in her hands and feet, experienced urinary incontinence, and had limitations in her ability to walk sit, and stand.  On examination, she walked with a normal gait but needed to use a walker to limit her pain.  Her dexterity and grip strength were normal and she had full range of motion of her elbows, forearms, wrists, and fingers as well as her hips, knees, and ankles.  There were no sensory deficits observed.  Dr. Liu believed that Plaintiff had moderate limitations in prolonged walking, bending, kneeling, squatting, lifting, carrying, overhead reaching, sitting, standing, and stair climbing.  She also needed to avoid dust and other irritating factors. (Tr. 1117-20).

Ms. Cruz completed a questionnaire on October 7, 2021. She stated that she saw Plaintiff every three months to treat her back disorder, and that Plaintiff's symptoms included pain, fatigue, insomnia, weakness, numbness, tingling, and a burning or stinging sensation in her arms and legs. The only objective finding she cited was limited range of motion of the back due to pain. Ms. Cruz thought these symptoms would frequently interfere with Plaintiff's attention and concentration but that she could tolerate the stress of a low-stress job. She could sit or stand for only 15 minutes at a time and for less than two hours in a workday. She also had to take frequent unscheduled breaks, could rarely lift less than ten pounds, could never twist, stoop, crouch, squat, or climb ladders, had manipulative and reaching limitations, and would be absent from work more than four days per month. (Tr. 1635-39).

### III. STANDARD OF REVIEW

The Court of Appeals for the Second Circuit has stated that, in reviewing a final decision of the Commissioner of Social Security on a disability issue,

> "[i]t is not our function to determine de novo whether [a plaintiff] is disabled." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996). Instead, "we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.2009); *see also* 42 U.S.C. § 405(a) (on judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").
>
> Substantial evidence is "more than a mere scintilla." *Moran*, 569 F.3d at 112 (quotation marks omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation marks omitted and emphasis added). But it is still a very deferential standard of review—even more so than the "clearly erroneous" standard. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). The substantial evidence standard means once an ALJ finds facts, we can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir.1994) (emphasis added and quotation marks omitted); *see also Osorio v. INS*, 18 F.3d 1017, 1022 (2d Cir.1994) (using the same standard in the analogous immigration context).

*Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447–48 (2d Cir. 2012).

### IV. DISCUSSION

#### A. Substantial Evidence to Support the RFC

In her first claim of error, Plaintiff contends that the highly specific residual functional

capacity made by the ALJ was not supported by substantial evidence. More specifically, she argues that many of the limitations contained in the finding, including the need to change positions after 30 minutes of sitting, the need to avoid repetitive neck movements, and the mental limitations, all lack support in the record. She asserts that even if these restrictions favor Plaintiff, remand is needed if the record does not support them. In response, the Commissioner notes that many of the restrictions found in the residual functional capacity finding were supported by Dr. Lorber's testimony and that the balance of the limitations were accommodations to Plaintiff's complaints of pain and its impact on her ability to attend and concentrate and were permissible given the state of the record as a whole.

The lack of support for a residual functional capacity finding was the issue raised before the Court in the prior case, and the Court explained the law this way:

> [I]t has long been recognized that when analyzing the record as a whole, the ALJ does not have to rely on one particular medical opinion, and may formulate an RFC without the benefit of a formal medical opinion. *See, e.g., Monroe v. Comm'r of Soc. Sec,* 676 F. App'x 5, 9 (2d Cir. 2017) (summary order) (the ALJ properly discounted a medical source opinion based on, among other things, the inconsistency of the physician's opinion with his treatment notes, and relied on treatment records and activities of daily living to formulate the RFC); *Tankisi v. Comm'r Soc. Sec,* 521 F. App'x 29, 34 (2d Cir. 2013) (summary order) (where "the record contains sufficient evidence from which an ALJ can assess ... residual functional capacity," a medical source statement or formal medical opinion is not necessarily required). Additionally, when the record contains sufficient evidence from which the ALJ can access the claimant's RFC, *see Pellam v. Astrue*, 508 F. App'x 87, 90 (2d Cir. 2013), or when the medical evidence shows a relatively minor physical impairment allowing the ALJ to render a common sense judgment about a claimant's functional capacity, an ALJ's reliance on a formal medical opinion may not be necessary. *House v. Astrue*, No. 5:11-CV-915 (GLS), 2013 WL 422058, at *4 (N.D.N.Y. Feb. 1, 2013). However, where, as here, Plaintiff suffers from several severe impairments, and where the record does not relate Plaintiff's diagnoses to her functional abilities, the ALJ is not qualified to make an RFC determination without relying on a medical opinion about Plaintiff's abilities to perform work on a continuous and substantial basis. *See Barnhardt v. Saul*, No. 18-CV-6632-MJP, 2020 WL 1330704, at *2 (W.D.N.Y. Mar. 23, 2020) ("[E]ven though the Commissioner is empowered to make the RFC determination, where the medical findings in the record merely diagnose the claimant's exertional impairments and do not relate those diagnoses to specific residual functional capabilities, the general rule is that the Commissioner may not make the connection himself."). Consequently, when making an RFC determination, an ALJ must rely on a medical opinion or other functional assessment from a medical source to translate Plaintiff's medical impairments into specific functional restrictions. *See Spivey v. Comm'r of Soc. Sec.*, 338 F. Supp. 3d 122, 127 (W.D.N.Y. 2018) ("While in some circumstances, an ALJ may make an RFC

finding without treating source opinion evidence, the RFC assessment will be sufficient only when the record is clear and contains some useful assessment of the claimant's limitations from a medical source." (emphasis added and internal quotation and citation omitted)).

*Barbara, W. v. Comm'r of Soc. Sec.*, 2021 WL 248453, at *3 (W.D.N.Y. Jan. 26, 2021).

The Commissioner is correct that the bulk of the ALJ's residual functional capacity finding is drawn from the testimony of Dr. Lorber, to which the ALJ gave substantial weight. Plaintiff does not appear to dispute the way in which the ALJ weighed his opinion, or, for that matter, any other medical opinion. All of the specific items listed in Plaintiff's memorandum (*see* Doc. 11-1 at 20-21) are actually more restrictive than the limitations enumerated by Dr. Lorber in his testimony. Although Plaintiff asserts, citing *Ippolito v. Comm'r of Soc. Sec.*, 2019 WL 3927453 (W.D.N.Y. Aug. 19, 2019), that it is error for an ALJ to add restrictions which actually favor the claimant, that case actually turned on the fact that the ALJ gave no weight to the only medical opinion of record, which indicated that the claimant had no restrictions, and then proceeded to interpret the medical evidence as supporting specific limitations - something clearly inconsistent with the law as stated above. Here, by contrast, the ALJ placed great reliance on a medical opinion which articulated a number of specific limitations, but added a few others to accommodate Plaintiff's subjective reporting of symptoms - pain in particular. The Court concludes that the ALJ was entitled, based on the entirety of the record, to make those judgments, and that there was no error in the way in which the residual functional capacity finding was formulated. *Cf. Jedermann v. Comm'r of Soc. Sec.*, 2020 WL 5361665 (W.D.N.Y. Sept. 8, 2020); *see also Paul W. H. v. Comm'r of Soc. Sec.*, 2022 WL 1913281, at *6 (W.D.N.Y. June 3, 2022)("'The fact that the ALJ afforded Plaintiff the benefit of the doubt and included a [...] limitation in the RFC assessment is not grounds for remand,'"), *quoting Lesanti v. Comm'r of Soc. Sec.*, 436 F. Supp. 3d 639, 649 (W.D.N.Y. 2020) (*citing Baker v. Berryhill*, 2018 WL 1173782, at *4 (W.D.N.Y. Mar. 6, 2018)).

### B. Conflict with the DOT

In her second claim, Plaintiff points out that all three of the jobs which the vocational expert said a person with Plaintiff's limitations could perform require, according to the Dictionary of Occupational Titles, frequent reaching. The ALJ found that Plaintiff had a limitation on overhead reaching. Because the DOT does not differentiate between overhead reaching and reaching in other directions, Plaintiff argues that there was a conflict between the vocational testimony and the DOT. According to her memorandum, the ALJ failed to resolve this conflict properly, simply taking the vocational expert's word for the fact that his experience showed that overhead reaching was not a requirement of these jobs, and this failure necessitates a remand. To the contrary, the Commissioner contends that any such conflict was resolved correctly because the ALJ was allowed to rely on the vocational testimony that the jobs did not require overhead reaching.

The testimony on this issue, which the Court summarized above, consists of the

following:

> Q. Does the Dictionary of Occupational Titles distinguish between overhead and (sic) reaching and reaching in other directions?
>
> A. No, it does not, Your Honor. That's again, based on my experience with the jobs that I've offered.
>
> Q. And so the jobs that you offered do require reaching, but not overhead reaching?
>
> A. That's correct.

(Tr. 832). Plaintiff's counsel did not ask any additional questions directed to that subject, instead asking what the impact would be of limiting reaching to occasionally. *Id*.

Plaintiff relies heavily on the decision in *Lockwood v. Comm'r of Soc. Sec.*, 914 F.3d 87 (2d Cir. 2019) in support of her argument that this testimony is not specific enough for the ALJ to have relied on it in determining that the conflict between the expert's testimony and the DOT was satisfactorily resolved. In that case, which also involved overhead reaching, the Court of Appeals concluded that the conflict had not been resolved because there was no specific identification of that conflict in the testimony and because the ALJ asked only a "catch-all" question about whether the expert's testimony was consistent with the DOT - which, notwithstanding the apparent conflict, the expert said that it was. *See id*. at 93. That is far different from what happened here, where the conflict was acknowledged and the expert provided testimony about why he believed that the jobs in question did not require overhead reaching.

This Court's decision in *Matthew M. v. Comm'r of Soc. Sec.*, 2022 WL 3346949 (W.D.N.Y. Aug. 12, 2022), also cited in Plaintiff's memorandum, is closer to being on point. There, relying on *Lockwood*, the Court concluded that although a reaching conflict was acknowledged and discussed at the hearing, it had not been sufficiently resolved where "[t]he VE offered no indication that he relied on job observation, research or specific knowledge of the job" to support his statement that the job did not involve overhead reaching to the extent that appeared to be contemplated by the DOT. His precise testimony was that he believed the jobs in question did not require overhead reaching based on "his years of experience working at vocational rehabilitation." *See* Case No. 1:20-cv-1644, Doc. 7, at 269.

The testimony in this case is somewhat different than the testimony critiqued in *Matthew M.* because the expert indicated that he had specific experience with the jobs in question, and not just in the field of vocational rehabilitation. This Court has held, in other decisions, that such testimony is sufficient. *See, e.g., Aracelis N.-B. v. Comm'r of Soc. Sec.*, 2024 WL 4647610, *5 (W.D.N.Y. Nov. 1, 2024). The Court concludes that the testimony given here more closely resembles that which was found sufficient in *Aracelis N.-B.* than the testimony given in *Matthew*

*M.*, and that a remand is therefore not required based on the ALJ's step five determination. Consequently, that decision will be affirmed.

## V.  CONCLUSION AND ORDER

For the reasons stated above, the Court **DENIES** Plaintiff's motion for judgment on the pleadings (Doc. 11), **GRANTS** the Commissioner's motion (Doc. 12), and **DIRECTS** the Clerk to enter judgment in favor of the Commissioner.

<u>/s/ Terence P.  Kemp</u>
**United States Magistrate Judge**